## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **GLORIA G. G. Q.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 4:23-CV-327-CDL** |
| | ) | |
| **MARTIN O'MALLEY,[1]** | ) | |
| **Commissioner of the** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Plaintiff seeks judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying Social Security disability benefits. The parties have consented to proceed before a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c). For the reasons set forth below, the Court **reverses** the Commissioner's decision and **remands** the case for further proceedings.

### I.      Standard of Review

The Social Security Act (the Act) provides disability insurance benefits to qualifying individuals who have a physical or mental disability. *See* 42 U.S.C. § 423.  The

---

[1]      On December 20, 2023, Martin O'Malley was sworn in as the Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), O'Malley is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A).

Judicial review of a Commissioner's disability determination "is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (quoting *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

So long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek*, 587 U.S. at 99 (quoting 42 U.S.C. § 405(g)).  Thus, the Court may not reweigh the evidence or substitute its judgment for that of the agency. *Noreja*, 952 F.3d at 1178.

## II.    Background and Procedural History

The plaintiff filed applications for disability insurance and supplemental security income (SSI) benefits on March 13, 2020, alleging a disability onset date of November 5, 2012. R. 64-65. She later amended her alleged onset date and sought benefits for a closed

period of disability from January 1, 2020 to September 1, 2022. R. 39. The plaintiff alleged disability due to a combination of mental and physical impairments, including post-traumatic stress disorder (PTSD), anxiety, severe anemia, asthma, migraines, and degenerative nerve disease. R. 65; *see also* R. 39-40.

The plaintiff was 45 years old on the amended alleged onset date. She has an eleventh-grade education. R. 391. She has worked in the past as a pawnbroker and in retail and sales positions. R. 59.

The Commissioner denied plaintiff's application on initial review and on reconsideration. After the plaintiff requested a hearing before an Administrative Law Judge (ALJ), a telephonic hearing was held on November 17, 2022. The plaintiff was represented by an attorney representative, and testimony was given by the plaintiff and a Vocational Expert (VE). *See* R. 34-63.

On February 22, 2023, the ALJ issued a decision denying benefits. R. 17-33. On June 5, 2023, the Appeals Council denied the plaintiff's request for review, rendering the ALJ's decision the agency's final decision. R. 1-4. Plaintiff filed a timely appeal in this Court after receiving an extension. (*See* Doc. 2). Accordingly, the Court has jurisdiction to review the ALJ's February 22, 2023 decision under 42 U.S.C. § 405(g).

## III.    The ALJ's Decision

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step

one, the ALJ determines whether the claimant is engaged in substantial gainful activity.[2] At step two, the ALJ determines whether the claimant has an impairment or a combination of impairments that is severe. At step three, the ALJ determines whether the claimant's severe impairment or combination of impairments is equivalent to one that is listed in the applicable regulation, which the Commissioner "acknowledges are so severe as to preclude substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (internal quotation and citation omitted); *see* 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpt. P, App'x 1 (Listings). At step four, the claimant must show that his impairment or combination of impairments prevents him from performing his previous work.

The claimant bears the burden on steps one through four. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). If the claimant satisfies this burden, thus establishing a prima facie case of disability, the burden of proof shifts to the Commissioner to show at step five that the claimant has the residual functional capacity (RFC) to perform other work available in the national economy, considering the claimant's age, education, and work experience. *Id*.

Here, at step one the ALJ found that the plaintiff engaged in substantial gainful activity from 2012 through 2019, but that she did not perform substantial gainful activity

---

[2]     As the Tenth Circuit has explained, when a claimant alleges that she was disabled for a closed period of time, the ALJ should first determine whether the claimant "was disabled for a finite period of time which started and stopped prior to the date of the ALJ's decision." *Newbold v. Colvin*, 718 F.3d 1257, 1260 n.1 (10th Circ. 2013) (citing *Shepherd v. Apfel*, 184 F.3d 1196, 1199 n. 2 (10th Cir.1999)).

during the alleged closed period of January 1, 2020 through September 1, 2022. R. 20. At

step two, the ALJ determined that the plaintiff has severe impairments, including anemia,

migraine headaches, and asthma. *Id*. The ALJ determined that plaintiff's mental

impairments of depression, anxiety, intermittent explosive disorder, and post-traumatic

stress disorder (PTSD) are nonsevere, finding that plaintiff has mild limitations or no

limitation in each of the "paragraph B" criteria—four areas of mental functioning used to

determine whether a claimant's mental impairments functionally equal a Listing. R. 21-23;

*see* 20 C.F.R. § 404 Subpt. P App'x 1. At step three, the ALJ found that plaintiff's

impairments do not meet or equal the severity criteria for any Listing, specifically

addressing Listings involving asthma, anemia, and primary headache disorders. R. 24.

At step four, after considering the entire record, the ALJ determined that plaintiff

has the RFC:

> to perform light work as defined in 20 CFR 404.1567(b) and
> 416.967(b). She can lift and carry 20 pounds occasionally and
> 10 pounds frequently. She can stand or walk for 6 hours of an
> 8-hour workday and sit for 6 hours of an 8-hour workday. She
> can occasionally climb ramps and stairs. She can never climb
> ladders, ropes, or scaffolds. She can occasionally stoop, kneel,
> crouch and crawl. She must avoid concentrated exposure to
> smokes, fumes, dusts, gases, and workplace hazards such as
> dangerous machinery or unprotected heights.

R. 25. The ALJ indicated that, in making this finding, he considered all of plaintiff's

symptoms in connection with the objective medical evidence and other evidence, based on

the requirements of 20 C.F.R. §§ 404.1529 and 416.929 and Social Security Ruling (SSR)

16-3p, as well as medical opinions and prior administrative findings, in accordance with

the requirements of 20 C.F.R. §§ 404.1520c and 416.920c. *Id*.

The ALJ concluded at step four that plaintiff can perform her past relevant work as a Pawn Broker, Dictionary of Occupational Titles (DOT) # 191.157-010, both as actually and as generally performed. R. 29. The ALJ thus found plaintiff not disabled at step four. The ALJ did not make alternative step-five findings.

## IV.    Discussion

The plaintiff contends that the ALJ erred at step four in assessing plaintiff's RFC. The plaintiff contends that the ALJ failed to perform a proper analysis of the plaintiff's subjective statements as to her functional limitations during the alleged closed period, and that the ALJ did not develop an adequate record as to the plaintiff's physical and mental RFC during the closed period at issue. The Commissioner offers a blended response to these arguments, asserting that the ALJ had no duty to further develop the record evidence, applied the proper legal standard in evaluating plaintiff's RFC and subjective statements, and relied on substantial evidence supporting the decision.

### A.    Physical RFC—The Plaintiff's Subjective Statements

The plaintiff testified that, around late 2019 or early 2020, she left a job she had held for several years with a pawnbroker. She stated that, due to her uncontrolled anemia and exhaustion, she would frequently have to be out sick for two to three weeks at a time. R 41. She indicated that, during this period, it took her a long time to recover even from relatively mild illnesses because her immune system was weakened. *Id*.; R. 46.

The plaintiff's employer began reducing her hours due to her frequent absences. R. 40-41. The plaintiff needed to work full-time, and therefore she started looking for work that "maybe wasn't as demanding . . . [or] fast-paced" and that would allow her to sit down.

R. 40-41. However, shortly after she took a new job at a call center, the business shut down due to the Covid-19 pandemic. R. 42.

Shortly thereafter, the plaintiff's physical impairments, primarily anemia, became exacerbated when she could not access effective treatment as a result of pandemic-related closures and restrictions. Plaintiff also alleges that her mental impairments worsened during that time, in part because she could only have counseling by phone, which she found to be much less effective than in-person counseling. *See* R. 53. During the closed period, the plaintiff started working again, but she was terminated after several months because of similar problems with extended absences due to fatigue and other anemia symptoms. R. 43-44. She was able to resume working full-time by the fall of 2022. *See* R. 52.

In April 2019, the plaintiff began receiving "more significant treatment related to anemia" in the form of iron infusions. R. 26. The plaintiff testified at the hearing that her anemia stemmed from "extremely heavy and extremely lengthy" menstrual periods, and that her gynecologist had suggested iron infusions after the plaintiff had had multiple blood transfusions that were unsuccessful in restoring sufficient levels. R. 44. She explained that, to receive these infusions, she had to be treated by specialists at a cancer center, where she was treated near cancer patients who were receiving chemotherapy. R. 45.

The plaintiff testified that, although she was initially told that the infusions would take an hour, she had a severe anaphylactic reaction after the first infusion. *Id*. Ultimately, a different infusion treatment was found to be effective on her, but these infusions "took six hours" and thus were "like an all-day thing[,] . . . very draining, very tiring." *Id*. She was receiving this treatment four times per month. However, during the Covid-19

pandemic, the cancer center stopped offering these treatments in order to protect the cancer patients at the facility. R. 45-46.

After the iron infusion treatments stopped, the plaintiff felt "really tired all the time, weak," with chest pain and shortness of breath. R. 47. These symptoms also exacerbated her mental impairments. At times, the plaintiff felt she could not catch her breath and felt "like [she] ha[d] an elephant on her chest," which caused her to "freak out" and go to the emergency room out of fear she was having a heart attack. *Id*.

In mid-2022, the plaintiff started on new psychiatric mediations and had other medication dosages adjusted, which helped with her mental health symptoms. R. 48. Her symptoms from anemia also started improving with iron supplements and after she had an IUD placed in May 2022. R. 51; see R. 27.

## B.    The ALJ's Analysis

The ALJ's decision acknowledged that the plaintiff "requested consideration of a Closed Period of Disability from January 1, 2020 through September 1, 2022." R. 20. Based on the plaintiff's earnings records, the ALJ found that her work "history is generally consistent with her request for a closed period beginning in January 2020 and her descriptions of having ceased work at this time" *id*., despite noting her "robust earnings history prior to January 2020," R. 26. The ALJ then purportedly based his findings at steps two through four on "the period(s) the [plaintiff] did not engage in substantial gainful activity." *Id*.[3]

---

[3]    Confusingly, the ALJ later concluded, "alternatively," that the plaintiff "was engaging in substantial gainful activity and/or would not have had any severe medically

In assessing a claimant's complaints of pain and other symptoms, an ALJ must consider: "(1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what we term a 'loose nexus'); and (3) if so, whether considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling." *Keyes-Zachary*, 695 F.3d at 1166-67 (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)).[4] In evaluating pain, the Commissioner considers factors including the claimant's daily activities; frequency and intensity of pain or other symptoms, precipitating and aggravating factors, and the effectiveness of treatment. *See* 20 C.F.R. § 404.1529(c). Under agency regulations, the ALJ's decision must give "specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the [ALJ] evaluated the individual's symptoms." SSR 16-3p. Courts "will not upset such determinations when supported by substantial evidence." *Wilson v. Astrue,* 602 F.3d 1136, 1144 (10th Cir. 2010) (internal citation omitted).

---

determinable impairments" during the closed period. R. 26. These "alternative" findings appear to be directly contrary to the ALJ's stated findings regarding plaintiff's earnings history and his step-two findings. The parties did not address the "alternative" findings in the briefing, and they have no bearing on the Court's conclusions here.

[4]    While the Commissioner now describes the analysis as involving a two-step process, the current regulatory policy generally comports with the approach as outlined in previous cases, including *Luna* and *Keyes-Zachary*. *See Paulek v. Colvin*, 662 F. App'x 588, 593-94 (10th Cir. 2016) (unpublished). (Under 10th Cir. R. 32.1(A), "[u]npublished decisions are not precedential, but may be cited for their persuasive value.").

Here, the ALJ stated that, despite affording a "degree of deference" to plaintiff's allegations and finding that she did have severe physical impairments, the ALJ did not find objective medical evidence to "support the degree of fatigue or weakness alleged." R. 28. He cited a "sustained work history and wholly benign treatment history" in explaining his conclusion. R. 27. The ALJ concluded that, although he had "generously" accorded

> all possible deference to the [plaintiff's] vague and generally unsupported descriptions of fatigue and weakness related to anemia or the frequency of respiratory ailments, infections, or periods of respiratory distress[,] . . . [o]verall, the records cannot support her alleged degree of severity and the undersigned instead finds that the [plaintiff] has retained the ability to work at all times relevant and that her return to work in 2022 reflects her capacity throughout the entirety of the period at issue instead of any medical improvement.

R. 27.

With respect to plaintiff's reported anemia-related symptoms, such as fatigue and shortness of breath, the ALJ found that "such limitations are not well documented in the record." R. 25. The ALJ noted "instead . . . that [plaintiff] responded well to infusions and use of oral iron supplements," and that gynecological treatment to better regulate menorrhagia was expected to further improve her symptoms. R. 28.

Explaining that "[r]outine physical examinations note normal strength, movement, and general state of health," the ALJ cited records from plaintiff's July 2021 hospital stay. *See* R. 27. However, the ALJ failed to explain how the evidence cited supports his analysis. Having reviewed the specific evidence cited in the ALJ's decision, the Court finds little support for the ALJ's conclusions, in light of the record as a whole.

For example, in January of 2021, plaintiff went to the emergency room with chest pain and palpitations after running out of her blood pressure medication. R. 1817. On physical examination, she was alert and awake, with non-toxic appearance, no respiratory distress, and normal range of motion in the extremities. *Id*. However, lab results indicated abnormal scores on multiple criteria, including white blood cells, hematocrit, and hemoglobin (8.2), which the ALJ failed to mention. *See* R. 1818.

In March of 2021, plaintiff presented to the emergency room with cough, congestion, sore throat, and myalgias, reporting her chest felt "heavy." R. 1772. She reported a history of anemia requiring blood transfusions. R. 1767. Although "well-appearing" with stable vital signs, her labs revealed anemia with hemoglobin of 7.8, which was noted to be "[s]imilar to [a] previous" reading. R. 1772. The plaintiff tested positive for mononucleosis and was sent home with directions of self-care and follow-up with primary care physician "in the next few days regarding her symptoms as well as her elevated blood pressure." *Id*.

In July of 2021, the plaintiff visited the emergency room for shortness of breath, appearing emotionally "overwhelmed" and reporting that she felt "horrible." R. 1710. The plaintiff tested positive for Covid, and providers determined that she needed to be admitted to the hospital to manage her anemia, noting her hemoglobin measure had "worsened down to 6.9 whereas her baseline is seemingly closer to 8.0." R. 2086. Hospital notes reported that plaintiff had a "longstanding history of anemia" that had become "newly symptomatic," requiring "inpatient mission at least 2 midnights for blood transfusion and monitoring for stability of hemoglobin." R. 2093. The provider noted that "[p]redominately

11

this seems to be menorrhagia issue," but that "[t]here is possibility of peptic ulcer disease contributing as well." *Id*. Testing during her hospital stay revealed a "profound iron deficiency despite home replacement" treatments. *Id*. The provider noted chest pain that he believed to be secondary to anemia, and chronic pain such that plaintiff "may benefit from prescribing some narcotics" in order to avoid taking NSAIDs, which she would avoid due to the anemia. *Id*.

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Wilson v. Astrue,* 602 F.3d 1136, 1144 (10th Cir. 2010) (citing *Diaz v. Secretary of Health & Human Servs.,* 898 F.2d 774, 777 (10th Cir. 1990)). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.,* 602 F.3d at 1144 (citing *Huston,* 838 F.2d at 1133).[5] Furthermore, while an ALJ is not required to discuss every piece of evidence, he must consider the entire record and "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996)).

---

[5]     The agency no longer uses the term "credibility" to describe the ALJ's analysis of subjective symptoms. *See* SSR 16-3p, 2017 WL 5180304 (the Commissioner "eliminat[ed] the use of the term 'credibility' from [the] sub-regulatory policy, as [the] regulations do not use this term," and "subjective symptom evaluation is not an examination of an individual's character"). However, the standard of review of the ALJ's consistency analysis is the same as when the agency used the term "credibility." *See, e.g., Zhu v. Comm'r*, 2021 WL 2794533, *5, n.7 (10th Cir. Jul. 6, 2021).

Here, other than a vague acknowledgment that plaintiff at one time "experienced acute respiratory distress" while she had Covid, after which she "recovered well with routine treatment," the ALJ's decision lacks any discussion of the above evidence as it relates to plaintiff's anemia and alleged physical limitations. R. 27.[6] While the decision did reference portions of the July 2021 hospital records, it failed to acknowledge significantly probative information, such as the plaintiff's hemoglobin reading of 6.9 and need for a blood transfusion. Puzzlingly, the ALJ cited some of these records in support of his finding that "routine physical examinations note normal strength, movement, and general state of health"—when instead, these records plainly include objective medical evidence supporting plaintiff's alleged limitations. R. 27. Nor did the ALJ clarify why he characterized her treatment as "routine" when it in fact required hospitalization for a blood transfusion due to anemia.

In explaining why he discounted plaintiff's subjective reports of fatigue and shortness of breath, the ALJ incorrectly stated that plaintiff "has not required emergency medical attention" for breathing difficulty. R. 27. The ALJ noted that "[d]espite [the plaintiff] reporting anemia with blood counts in the 6 to 7 range, bloodwork [ordered by the CE] noted a hemoglobin count of 8.0L" on one occasion in January 2021. *Id*. However, the ALJ's decision fails to explain how that measurement is inconsistent with the plaintiff's

---

[6]     While the plaintiff's brief also argues the ALJ did not adequately consider evidence of plaintiff's mental impairments, it does not point to any work-related functional limitations arising from plaintiff's mental impairments during the closed period at issue. As the focus of disability determination is on the functional consequences of a condition, not the mere diagnosis, the Court declines to construct an argument on plaintiff's behalf. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

complaints. The ALJ provided no context as to the significance of the 8.0 hemoglobin reading, also failing to note that the apparent "reference range" for this measurement was 11.7 to 15.5 g/dL. *See* R. 1470; *see also* SSR 16-3p ("[W]e will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual."). Moreover, as noted above, the ALJ apparently ignored evidence that plaintiff's hemoglobin measured 6.9 in the hospital a few months later.

In addition to ignoring significantly probative evidence, the ALJ failed to provide other substantial support relating to the closed period when plaintiff alleges she was unable to work. The ALJ essentially rejected the state agency consultants' prior findings that plaintiff did not have a severe physical impairment, acknowledging that additional evidence supported a "finding that elevates the totality of her impairments to create a severe medically determinable impairment." R. 28. Notably, the prior administrative findings were made relatively early in the alleged closed period and before plaintiff's July 2021 hospitalization. The ALJ also discounted the third-party function report of plaintiff's friend, who made statements corroborating her allegations of fatigue and frequent illness during the relevant period. *Id.*; *see* R. 252-259.

As such, the Court is unable to determine on what basis the ALJ determined the plaintiff "retained the ability to work at all times relevant and that her return to work in 2022 reflects her capacity throughout the entirety of the period at issue instead of any medical improvement." R. 28. Moreover, that finding is inconsistent with the ALJ's own

notations that the plaintiff began receiving "more significant treatment related to anemia" in 2019, which improved her anemia, but which ceased during the pandemic, R. 25, and that plaintiff's anemia was expected to improve in conjunction with gynecological treatments she reportedly began receiving in mid-2022. R. 28.

For the reasons explained herein, the ALJ's decision did not adequately explain why he discounted the plaintiff's complaints regarding her limitations from her physical impairments. Remand is therefore necessary for further consideration of the record as to the plaintiff's physical RFC and, as appropriate, an explanation sufficient to enable meaningful review of the ALJ's reasoning in light of the record as a whole.

## V.      Conclusion

For the reasons set forth above, the Court finds the ALJ's determination that the plaintiff can perform the demands of relevant past work is not supported by substantial evidence. Therefore, the decision of the Commissioner finding Plaintiff not disabled is **reversed and remanded** for further proceedings consistent with this opinion.

**SO ORDERED** this 16th day of September, 2024.

Christine D. Little
United States Magistrate Judge

15